Sam **PERRONE**, Appellant,

v.

Stanley N. **KLINE**, Appellee.

No. 17008.

Court of Civil Appeals of Texas.

Dallas.

Jan. 26, 1968.

Rehearing Denied March 1, 1968.

Gene W. Schutze, Dallas, for appellant.

Austin C. Bray, Jr., of Wynne, Jaffe & Tinsley, Dallas, for appellee.

BATEMAN, Justice.

The ultimate question here is whether the lessor or the lessee is liable for the cost of repairing a gas leak under certain leased premises. The facts are undisputed and both parties moved for summary judgment. The appellee's motion was sustained and that of appellant overruled. We affirm.

Appellee had leased certain premises to appellant for retail business use. The premises consisted of a store building and an adjoining parking area. A gas leak occurred under the asphalt paving of the parking area and appellant, deeming it an emergency situation endangering the premises and his customers, caused the leak to be repaired at his cost and sued appellee for reimbursement.

Pertinent portions of the lease were:

"3rd. That the Lessor shall at his expense maintain in good repair the roof, foundation and exterior walls of the building *and parking area*. The Lessee shall maintain all glass, including plate glass, and any special store front or equipment.

"Lessee agrees to give Lessor written notice of defects or need for repairs in roof, foundation or exterior walls of the building *and parking area* and Lessor shall not be liable to Lessee for any damage caused by same being or becoming out of repair until he has had reasonable opportunity to have same repaired after being notified of need of same by Lessee. * * *

"4th. That the Lessee shall at his expense keep the interior of the building, including the plumbing, closets, pipes and fixtures belonging thereto, in good repair; and shall take good care of the property and its fixtures and suffer no waste; and keep the water pipes and connections free from ice and other obstructions, to the satisfaction of the municipal or governmental authorities, during the term of this lease. * * *" (Italics ours.)

The words "and parking area," which we have italicized, were interlined with a typewriter in the printed form.

The parties agree that the contract is unambiguous, and it remains only to determine what they intended by the language used. Appellant's position is that the language in the first paragraph of the "3rd" section, wherein appellee, as lessor, promised to "maintain in good repair the roof, foundation and exterior walls of the building and parking area," obligated him to maintain in good repair the gas pipes lying beneath the paving of the parking area. We do not agree.

We think that when the parties added "and parking area" to the portions of the building coming within the ambit of the lessor's responsibility they contemplated only the surface of that area, not conduits of gas, water or electric power that might lie beneath that surface. They did not speak of it as a lot or part of a lot; they did not describe it by metes and bounds; they merely described it as an area allocated to a certain use, that of

parking, or temporarily storing vehicles on its surface. The presence or absence of gas pipes beneath the area was wholly immaterial to the contemplated use thereof. The lease did not specifically provide that the lessor should maintain those gas pipes in good repair, and we see nothing in the record before us to justify our implying such a covenant from the language used.

"In the absence of anything to show an agreement by the parties to the contrary, the lessor is not bound to make repairs on the portion of the premises over which he has no control. Nor is the lessor required to pay for repairs that may have been made by the lessee. * * * The tenant takes the premises as he finds them. A covenant by the lessor to make repairs is never implied." 35 Tex.Jur.2d, Landlord and Tenant, § 82, p. 572, and authorities cited therein.

Not only would it have been the appellant's responsibility to make the repairs in question at common law, but in our opinion it was made his duty to do so by the "4th" section of the lease, wherein he agreed at his expense to "keep the interior of the building, *including the plumbing,* closets, *pipes and fixtures belonging thereto,* in good repair; and shall take good care of the property and its fixtures *and suffer no waste;* * * *." (Italics ours.)

■ We think the leaking pipe was clearly within the definition of "plumbing" and "pipes and fixtures belonging thereto," as used in the "4th" section of the lease. Vernon's Ann.Civ.St., Article 6243–101, Sec. 2(a), defines "plumbing" as including *"All piping,* fixtures, appurtenances and appliances *for a supply of* water or *gas,* or both, for all personal or domestic purposes *in and about buildings* where a person or persons live, work or assemble; *all piping,* fixtures, appurtenances and appliances *outside a building connecting the building with the source of* water or *gas supply,* or both, on the premises, or the main in the street, alley or at the curb; * * *." (Italics ours.)

Moreover, in our opinion appellant breached that portion of the "3rd" section of the lease wherein he agreed to give appellee "written notice of defects or need for repairs in roof, foundation or exterior walls of the building and parking area." No such written notice was ever given. No notice of any kind was given to appellee until the day after the leak was discovered, and then only orally while the repairs were being made.

■ Appellant endeavors to excuse his failure to give written notice on the ground that a serious emergency had suddenly arisen, one fraught with great danger to persons and property, leaving no time for writing letters to the landlord and waiting until he had had reasonable opportunity to have the leak repaired. However, appellant could have had the repairs made on an emergency basis, as he did, and still have given the written notice he had agreed to give. The emergency constituted no excuse for his failure to comply with the terms of the lease contract respecting notice. Therefore, for this additional reason we think the summary judgment for appellee was correct.

Appellant also contends that the court erred in overruling his motion for summary judgment on the question of liability, leaving for separate trial the reasonableness of the repair charges. For the reasons hereinabove given in our decision that appellee was entitled to summary judgment, we hold that there was no error in overruling appellant's motion.

The judgment appealed from is

Affirmed.